April 3rd, 1905.

———o———

## No. 3650.

(Court of Appeal, Parish of Orleans.)

### J. S. LANGSDALE vs. LEOPOLD LEVY.

Appeal from Civil District Court, Division "C."

C. I. Denechaud, for Plaintiff and Appellee.

Bernard Bruenn, for Defendant and Appellant.

If, without any serious ground of complaint, a man should send away a laborer whose services he has hired for a certain time, before that time has expired, he shall be bound to pay to such laborer the whole of the salaries which he would have been entitled to receive, had the full term of his services arrived.

ESTOPINAL, J. This proceeding was instituted by the plain-

199

tiff against the defendant for the recovery of wages alleged to be due the former for the entire term fixed by the contract of employment, notwithstanding his discharge by the latter prior to the expiration of that term.

The defendant urges that the discharge was justified by good and sufficient causes.

There was judgment below in favor of plaintiff and defendant appeals.

In the brief we find the defenses to be, 1st, a denial of the existence of a contract. 2nd. That plaintiff was employed to do certain special work in defendant's store and that he was shown to be incompetent. 3rd. That plaintiff volunteered to and did take a customer over to a neighboring competing establishment, and there assisted said customer in making a purchase. 4th. That plaintiff, in consideration of the alleged sale made in said neighboring store, received a commission. 5th. That plaintiff, by his advice, was instrumental in undoing or breaking a sale already made in defendant's store.

As to the first defense we can only discover an attempt by the defendant to avoid an obligation by including among his defenses, averments which the record shows were without foundation. We find the contract in the record as well as the admission of the defendant when examined as a witness.

Plaintiff's employment, under the contract with defendant, began on June 5th, 1903, and his discharge occurred December 2nd, 1903.

Taking up the second defense we shall dispose of it with the statement that notwithstanding plaintiff had been at work during six months, the record does not show that a word of complaint was ever said to him or any one else touching his competency, and further, that plaintiff's discharge was not predicated on that cause.

Of course this practice of lugging in both immaterial as well as material averments may be legitimate, and in the hands of the

able counsel some plausibility is given such defenses here, but this and other Courts, we venture to say, will not consume time or word in their useless discussions.

In considering the third defense, as we have set them out, we reach the only one which in our opinion is worthy of consideration at all, to-wit: that plaintiff had consented to, and did accompany a customer, Mrs. Walker B. Spencer, to a neighboring competing store to assist her in matching some goods previously purchased in defendant's store, with some rugs, which the evidence shows this lady had already purchased at B. Cohn and Company, the rival establishment.

The evidence on this phase of this case, as we appreciate it, does not bear out the charge, the facts being that this lady, who was a customer of defendant's, being unable to find in that store certain articles of room-furnishing to match earlier purchases, repaired to the competing store of B. Cohn and Company and there found what she thought, and what the clerk who attended her, advised her was what she required. Mrs. Spencer, not satisfied however, that her own judgment and that of Cohn's clerk was correct, called at defendant's store and requested plaintiff to accompany her to Cohn's for the purpose of passing judgment on her purchase, which he did.

Mrs. Spencer testifies that plaintiff, though consenting to oblige her, repeatedly urged her to give his house another chance to make the sale.

In view of this lady's statement, which we believe to be true, we do not think that it has been shown that plaintiff had not at the time, the interest of his employer at heart, and we take it that a flat refusal on his part to accompany this patron of the establishment for which he worked, to another house, not to make a purchase, but to pass judgment on a sale already made, would, in all probability, have forfeited the friendship and good will of this patron and lost her forever to the house, all for the failure to exercise the commonest courtesy, but, what is still more important

in this case, ordinary business foresight and acumen.

The learned counsel for the defendant urges that plaintiff was to devote his entire time to his employer's business, to which view we readily subscribe, but it cannot be reasonably urged that the employee's absence for a few minutes, which, as we appreciate the testimony here, had for its purpose the doing of an act calculated to rebound to the benefit of his employer, consumed time which was prejudicial to that employer's interest.

It is the every day experience of shoppers who are unable to suit themselves in one store to be directed by some one in that store to another, where the articles wanted may be found. Plaintiff's absence for a moment does not in our opinion constitute that serious ground of complaint which the law intends.

We gather, however, from the testimony and the arguments that the plaintiff might have remained in defendant's employ to the end of the contract term had not a Mr. Mann, one of defendant's employees, appeared on the scene with the information that plaintiff had received a commission from Cohn and Company, in connection with Mrs. Spencer's purchase from that house.

The testimony found in the record negatives this charge absolutely.

It appears that this ground of complaint comes of a statement alleged to have been made by the plaintiff to his landlady, who in turn repeated it to Mr. Mann, one of her boarders, to the effect that he, plaintiff, had made a sale outside of his store and had received a good commission therefor. If it be true that plaintiff made the statement credited to him, the testimony convinces us, that at best, it was only an idle foolish boast which certainly cannot operate to avoid the contract, when in truth and in fact, it is established that plaintiff did not receive a commission.

Dan Weil, the clerk who attended Mrs. Spencer at Cohn's, testifies that the sale was made by him and not by plaintiff, the latter simply passing upon the color and shade of the rugs.

Cohn, one of the proprietors, and Mrs. Spencer, the only persons in a position to know, deny flatly that plaintiff was paid a commission.

Mr. Mann and Mr. Aufdemorte are relied upon by the defendant to establish the breaking up of a sale to Mrs. Spencer. The facts as to this circumstance are, briefly, that Mrs. Spencer called at defendant's store, examined some rugs, and ordered them sent to her house, saying that if they suited she would take them. It appears that the rugs did not please her and she returned them. Mrs. Spencer denies that she was advised or influenced by plaintiff in this action and says that she returned them because they did not suit.

Plaintiff frankly states that he was trying, as he puts it, to make himself solid with Mrs. Spencer, which, we believe was to the interest of defendant, but right here we cannot resist making the assertion that a number of the witnesses for the defendant appear to have been very industriously engaged in making themselves solid in another direction.

We have, at considerable length, reviewed this case and according to our appreciation of the testimony defendant has failed to establish that "serious ground" of complaint which will warrant the discharge of an employee under contract.

Our attention is called to the fact that plaintiff, who was employed at the rate of $100.00 a month, began his employment on June 5th, 1903, and that he was paid in full up to the day of his discharge, December 2nd, 1903, within two days of the six months of his service and that there was error in the judgment below in favor of plaintiff for $620.00.

This is borne out by the record, and the judgment is therefore so amended as to reduce the amount from $620.00 to $606.70, and as so amended it is affirmed, appellee to pay costs of appeal.